**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| UAL Corporation, *et al.*, | ) | Case No. 02-B-48191 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hon. Eugene R. Wedoff |
| UNITED AIR LINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 05-1758 |
| | ) | |
| Wells Fargo Bank Northwest, N.A., as | ) | |
| Trustee of the Pass Through Trust Agree- | ) | |
| ment, as Trustee of the Trust Supplement | ) | |
| No. 19971A-1 to the Pass Through Trust | ) | |
| Agreement, and as Subordination Agent, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**INTRODUCTION**

This adversary proceeding, arising in the bankruptcy of UAL Corporation and related en-

tities, has been bought by United Air Lines, Inc. ("United"), one of the debtors, to enforce an as-

serted right to purchase certain equipment trust certificates ("Certificates") issued under the

terms of a Pass Through Trust Agreement dated December 23, 1997 between United and First

Security Bank, National Association, as Trustee, in a transaction designed to finance 14 aircraft

in United's fleet. The overall financing for the acquisition of these 14 aircraft is referred to as

the 1997-1 EETC Transaction or the "Transaction". Defendant Wells Fargo Bank Northwest,

N.A. ("Wells Fargo" or the "Trustee") serves as successor trustee under the Pass Through Trust

Agreement, as supplemented, and serves in other roles in the Transaction.

## I.    JURISDICTION

District courts have exclusive jurisdiction over bankruptcy cases (cases brought under the

Bankruptcy Code, Title 11 U.S.C.). 28 U.S.C. § 1334(a).   They have concurrent jurisdiction

over all civil proceedings "related to" bankruptcy cases. 28 U.S.C. § 1334(b).   United's claim

to a right to purchase the Certificates is related to its bankruptcy case, since the resolution of this

claim it will affect the extent of United's estate. *See UNR Industries, Inc. v. Continental Casu-*

*alty Co.*, 942 F.2d 1101, 1103 (7th Cir.1991); *In re Xonics, Inc.*, 813 F.2d 127, 131-32 (7th

Cir.1987). ("Congress used the phrase 'arising under title 11' to describe those proceedings that

involve a cause of action created or determined by a statutory provision of title 11.")

Pursuant to 28 U.S.C. § 157(a) and its own Internal Operating Procedure 15(a), the Dis-

trict Court for the Northern District of Illinois has referred its bankruptcy cases to the bankruptcy

court of this district.  When presiding over a referred case, the bankruptcy court has jurisdiction

under 28 U.S.C. § 157(b)(1) to enter appropriate orders and judgments in core proceedings

within the case.   Proceedings "arising in" and "arising under" the Bankruptcy Code are core

proceedings. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir.1987).  A non-exlcusive

list of core proceedings is set out in 28 U.S.C. § 157(b)(2).

United asserts that its claim to purchase the certificates is a core matter under

§ 157(b)(2)(C), "counterclaims by the estate against persons filing claims against the estate." It

is not. The Trustee has indeed filed a claim against United, but that claim is based on United's

failure to pay the amounts due on equipment notes that United issued in connection with the

Transaction. The Truste's claim, then, deals with United's obligation as debtor under promissory

notes. United's claim in the present proceeding, by contrast, arises from its position as an inves-

tor in a trust that holds the equipment notes as its res. United's right to purchase the Certificates

2

exists completely independent of a default by United under the equipment notes. Thus, United's claim against the Trustee is not a compulsory counterclaim to the Trustee's claim in United's bankruptcy, and not a core proceeding  *See In re Yagow*, 53 B.R. 737, 739 (Bankr. D.N.D.1985) (explaining that only compulsory counterclaims generate core proceedings).

In other respects, United's claim is simply the assertion of a right that would exist independent of any bankruptcy proceeding, and so is simply "related to" the bankruptcy case. *Wood, supra*, 825 F.2d at 97 (5th Cir.1987) ("If the proceeding does not involve a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but . . . it is [a] non-core proceeding."). As to such proceedings, this court is limited, in the absence of consent from the parties, to making recommendations to the district court, which alone may enter a final order resolving the proceeding. 28 U.S.C. § 157(c)(1).

## II.   PROCEDURAL BACKGROUND

1.   On December 9, 2002 (the "Petition Date"), UAL Corporation and 27 subsidiaries (the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code and commenced the above-captioned Chapter 11 cases (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. Pursuant to an order of the Court entered on December 11, 2002 [Docket No. 232], the Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered under Case No. 02-B-48191.

2.   On July 26, 2005 United filed a motion seeking approval to purchase the Class B and C Certificates in the Transaction [Docket No. 12049], described more fully at ¶ 15 below,

which the Court granted on July 27, 2005. On August 4, 2005 United filed a motion seeking approval to purchase the Class A Certificates in the Transaction, which the Court granted on August 8, 2005.

3.      To resolve certain disputes between the parties regarding United's purchase of the Class A Certificates, on August 15, 2005 United filed an adversary proceeding, Case No. 05-1758 [Adv. Docket No. 1] (the "Adversary Proceeding"). The Adversary Proceeding sought (a) a declaration with respect to United's entitlement to purchase the Class A Certificates and the Purchase Price relating thereto, (b) specific performance with respect to purchase right, (c) turnover of the Class A Certificates, and (d) a mandatory injunction requiring the Trustee to designate an account to enable United to deposit the Purchase Price. On September 15, 2005, United filed its Motion for Summary Judgment [Adv. Docket No. 11]. United filed a Memorandum of Law in Support of its Motion [Adv. Docket No. 11, Attachment 1], accompanied by a Statement of Material Facts, and an affidavit [Docket No. 13]. The Trustee filed its Response to both the Memorandum of Law and the Statement of Material Facts, and submitted its own affidavits [Adv. Docket No. 19]. United filed a Reply to both documents [Adv. Docket No. 23].

4.      The Trustee filed a motion to dismiss the Adversary Proceeding [Adv. Docket No. 10], to which United filed a response [Adv. Docket No. 17], and the Trustee filed a reply [Adv. Docket No. 22]. The Trustee's motion to dismiss was denied by the Court on November 18, 2005.

5.      In connection with United's motion for summary judgment, the Court allowed limited discovery with respect to the factual background of United's purchase of the Class B and

4

C Certificates in the Transaction, and both parties filed supplemental memoranda at the conclusion of discovery [Docket Nos. 32 and 36].

6.   In connection with its Motion for Summary Judgment, United also filed a Supplemental Memorandum regarding the jurisdiction of this Court over United's adversary proceeding [Adv. Docket No. 11, Attachment 41], to which the Trustee filed a response [Adv. Docket No. 34], and United filed a reply [Adv. Docket No. 45].

7.   On August 13, 2005, in response to the Trustee's notice that the Trustee had exercised a remedy to sell equipment notes involved in the Transaction, United filed an Emergency Motion to Enforce Interim Adequate Protection Stipulation [Docket No. 12191] ("Motion to Enforce") in the main UAL bankruptcy case, to which the Trustee filed a response [Docket No. 12227]. After a hearing on August 16, the Court requested additional briefing on the issue of whether the Trustee's sale of the equipment notes violated the automatic stay imposed by § 362(a) of the Bankruptcy Code (Title 11, U.S.C.). Both parties submitted supplemental briefs [Docket Nos. 12406, 12408]. On August 26, 2005 the Court held a hearing on the Motion to Enforce, initially ruling that United had a sufficient interest in the equipment notes, as the res of a trust in which United was a beneficiary, to bring the notes within its bankruptcy estate, so that a sale of the notes violated the automatic stay and was void.

8.   In response, the Trustee filed a motion to reconsider the Court's August 26 ruling [Docket No. 12635], to which United filed a response [Docket No. 13159], and the Trustee filed a reply [Docket No. 13242]. On November 18, 2005 this Court granted the Trustee's motion, holding, upon reconsideration, that where a debtor has only a limited beneficial interest in property held in trust -- in this case the Class B, C and D Equipment Notes held as property of the

5

trusts involved in the Transaction -- without a right to control the property, only the debtor's limited beneficial interest becomes estate property, and not the trust property itself. In light of this determination, the Court vacated the order originally entered and reinstated United's original motion to void the Trustee's sale of the equipment notes.

9.   In response to the Court's order granting the Trustee's motion for reconsideration, United moved [Docket No. 13697] to alter or amend that order. The Trustee filed its response [Docket No. 13876], and United filed its reply [Docket No. 13989]. United also filed a supplemental memorandum in support of its original motion to void the Trustee's sale of the equipment notes [Docket No. 13842]. The supplemental memorandum did not address the original contention that the sale violated the Adequate Protection Stipulation and Order, but instead made several new arguments falling into two general categories. The first new argument is that even if the equipment notes could otherwise have been sold by the Trustee without violating the automatic stay, United obtained rights in the notes by virtue of its notice to purchase the Class A Certificates so that the stay was violated by the equipment note sale. The second set of new arguments asserts that even if the sale did not violate the automatic stay, it was ineffective under the financing agreements themselves as having been conducted unreasonably, in bad faith, or in breach of fiduciary duty. The Trustee filed a Response to the Supplemental Memorandum [Docket No. 14019].

10.   Both parties in their briefing have urged prompt resolution of all of these controversies with each side asserting that it is prejudiced by delay.

## III.   SUMMARY OF RULINGS

11.    United's motion to alter or amend the Court's November 18, 2005 ruling is denied on the grounds that the Trustee's sale of the equipment notes did not violate the automatic stay.

12.    United's Motion to Enforce is granted, on the basis that the Trustee's sale of the equipment notes is void as a sham transaction and not "reasonable" under the Intercreditor Agreement that provided the basis for the Trustee's sale.

13.    United's motion for summary judgment is granted to this extent:  Upon United's payment of the appropriate amount (discussed below) into the account that has been designated for receipt of adequate protection payments, United will be the owner of the Class A Certificates and the controlling party with respect to remedies.

## IV.   PROPOSED FINDINGS OF FACT

14.    The 14 aircraft in the 1997-1 EETC Transaction are part of United's current fleet and United intends to continue to use these aircraft in its operations.  In contrast to the other aircraft in the fleet, however, United has not entered into any permanent refinancing arrangements for these aircraft and continues to avoid the possibility of immediate repossession only through an interim agreement titled "Stipulation and Order Approving Interim Adequate Protection of 1997-1 EETC Aircraft" (the "Adequate Protection Stipulation and Order") (Exhibit H to United's memorandum in support of its summary judgment motion).  This agreement allows United to remain in possession of the aircraft in exchange for monthly payments to the financing parties.  However, the agreement is in effect on a month-to-month basis and may be terminated with as little as one day's notice prior to the 15th of each month. (Adequate Protection Stipulation and Order, ¶ 6, at 4.)

15.    The financing agreements for the 14 aircraft that United entered into before its

bankruptcy, now in default, consist of, among other things, a Pass Through Trust Agreement and

four trust supplements creating trusts holding four classes of equipment notes, A through D, se-

cured by the aircraft.  (A copy of the Pass Through Trust Agreement is attached as Exhibit C to

United's summary judgment memorandum.)  Each of the trusts issued Certificates representing

undivided fractional interests in the trust.  An Intercreditor Agreement (Exhibit B to United's

summary judgment memorandum) establishes the rights of each trust *vis-à-vis* the others and

other financing parties.  Both the Pass Through Trust Agreement and the Intercreditor Agree-

ment provide that they should be enforced under New York law.

16.    The basic structure of the financing is that funds from United in payment of

equipment notes go to a subordination agent who directs the funds to the trusts for distribution to

the Certificateholders of each trust.  In the event of a shortfall in funding, the Class A Certifi-

cateholders are entitled to be paid in full before the Class B Certificateholders receive any pay-

ment, the Class B holders before Class C, and Class C before Class D.  The Trustee of the senior

unpaid trust is the controlling party for determining the exercise of remedies in the event of de-

fault.

17.    Under Article IV of the Intercreditor Agreement, the controlling party has at least

three alternative remedies in the event of default.  First, under Section 4.1(a)(1), the controlling

party may "dispose of and deliver all but not less than all of the equipment notes to any person at

a public or private sale upon such terms and conditions as it may reasonably deem advisable in

accordance with applicable law."  Second, under Section 4.1(b), the controlling party may ar-

range for a foreclosure of the liens securing the equipment notes, that is to say a sale of the air-

craft.  Third, also under Section 4.1(b), the controlling party "may maintain possession of the

8

equipment notes and continue to apply monies received in respect of such equipment notes," in accordance with the generally applicable terms of the Intercreditor Agreement.

18.    These remedies of the Intercreditor Agreement, as described in the preceding paragraph, are reflected in Section 6.0(1)(a) of the Pass Through Trust Agreement, which provides that the Trustee of any of the four trusts "may, to the extent it is the controlling party at such time, direct exercise of remedies as provided in the Intercreditor Agreement."

19.    However, Section 6.01(b)(i) of the Pass Through Trust Agreement provides that in the event of a default by United under the equipment notes, "each Class B Certificate holder shall have the right to purchase all but not less than all of the Class A Certificates upon ten days written notice to the Trustee and each other Class B Certificateholder." Section 6.01(b) goes on (at p. 36) to define the price required for such a purchase and to state that the purchase price shall be made to an account or accounts designated by the Class A Trustee; it further provides (at p. 37) that "the Certificates . . . shall be deemed to be purchased on the date payment of the purchase price is made notwithstanding the failure of the applicable Certificateholders to deliver such Certificates."

20.    United was, from the beginning, the sole owner of the Class D Certificates. In July of this year, with court authorization, United purchased the Class B and C Certificates. On August 2, as holder of the Class B Certificates, United sought to purchase all of the Class A Certificates, thereby becoming the controlling party. The Trustee of the Class A trust responded to the attempted purchase (1) by asserting that the proposed purchase price was inadequate under Section 6.01(b), and (2) purporting to exercise its right to sell all of the equipment notes. Although requested by United, the Trustee did not designate an account to which payment should

9

be made.  However, in subsequent briefing the Trustee has stated that the appropriate account

would be the one that United has used for purposes of payments under the Adequate Protection

Stipulation and Order.

21.     On August 5, 2005 Wells Fargo as Trustee exercised its rights under the Inter-

creditor Agreement to convey the equipment notes to a new trust dated August 5, 2005.  The

beneficiaries of the new trust were the Class A Certificateholders.

22.     This factual situation has given rise to two basic disputes:  (1) whether United

may purchase the Class A Certificates, and (2) whether the Trustee's sale is effective.

## V.     PROPOSED CONCLUSIONS OF LAW

### A.     The Trustee's Sale of the Equipment Notes

23.     United's motion to alter or amend the November 18 ruling on the Trustee's mo-

tion to alter or amend is denied.  This is not really a Rule 59 motion since the order to which it

refers was interlocutory, but as the motion itself notes, it was filed in an abundance of caution.

Moreover, interlocutory orders may be reconsidered at any time, *Cameo Convalescent Center,

Inc. v. Percy*, 800 F.2d 108, 110, (7th Cir. 1986), and so the motion is appropriate even if not

necessary.  However, on its merits, the motion presents nothing that requires any change in the

November 18 ruling.  No case has been cited for the proposition that the res of a trust not con-

trolled by a beneficiary is property of the beneficiary's bankruptcy estate.  And for the reasons

given in the November 18 ruling, the weight of authority and the policies of the Bankruptcy

Code require the contrary result.

24.     With respect to the original motion to void the Trustee's equipment note sale,

counsel for the Trustee waived any defect involved in United's raising new grounds for voiding

10

the sale in the context of its supplement memorandum, and the Trustee has responded to these new grounds on their merits. There are no material facts in dispute with respect to the motion. The circumstances surrounding the Trustee's equipment note sale have been subject to discovery, and the parties have submitted the relevant documents. There is no conflict in the parties' position with respect to the identity of these documents, and there appears to be no testimony that would add to them. Therefore, the matter can be ruled on as a question of law.

25.     The Trustee's sale of the equipment notes was completely private, with no marketing or other attempt to obtain the best available price for the notes. The consideration that flowed from the sale was simply certificates in a new trust created for the benefit of old trust's Certificateholders. Before and after the sale, the equipment notes were held in trust for the benefit of the Class A Certificateholders. The only change was in the terms of the trust. There was no economic substance to this transaction. The actual affect of the transaction was a unilateral amendment of the terms of the trust to entitle the Class A Certificateholders to 9 percent interest on their investment before they would lose the right to control the equipment notes, thus eliminating United's claim that it is entitled to obtain control over the res of the Class A trust by paying a lower interest rate for the Class A Certificates.

26.     This sale would not be recognized as reasonable under New York law and, therefore, would not comply with the Trustee's obligation under its remedies set forth in the Intercreditor Agreement quoted above, which requires that any sale take place in the "reasonable" discretion of the Trustee. *See Bankers Trust Co. v. J.V. Dowler & Co., Inc.,* 47 N.Y.2d 128, 134 & n. 4, 417 N.Y.S.2d 47, 390 N.E.2d 766 (1979) (discussing the obligation of a secured party under the Uniform Commercial Code to dispose of collateral in a commercially reasonable manner, and observing that "this broadly stated standard of conduct evolved long before our adoption

of the Uniform Commercial Code") (*citing In re Kiamie*, 309 N.Y. 325, 330, 130 N.E.2d 745

(1955), which states that in a post-default context, the secured party "must do nothing to impair

the pledge's value"); *see also Cole v. Manufacturers Trust Co.*, 299 N.Y.S. 418, 436-37

(N.Y.Sup. 1937), collecting authorities for the proposition that sales "private sales . . . by means

of book entries," without notice to parties with an interest in collateral, are shams. The apparent

purpose underlying the remedy of a sale of all of the equipment notes (those held by each of the

four trusts) is to generate the maximum recovery on the basis of those notes. This Trustee's sale

did nothing of the sort. It was simply a set of book entries purporting to change the legal rights

of the Class A Certificateholders. The sale is ineffective under the terms of the Intercreditor

Agreement itself and, therefore, is not effective to remove the equipment notes from the Class A

trust, and United's original motion to void the sale is granted.

27.    However, United's new arguments that the sale violated the automatic stay are not

well grounded. United's notice that it would purchase the Class A Certificates did not bring the

equipment notes into United's bankruptcy estate, so that the Trustee's sale of the notes violated

the automatic stay. What the Trustee sought to sell was simply the equipment notes—not the

Class A Certificates, and as discussed above, the equipment notes were the res of the trust, which

was not subject to complete control by the beneficiary. Therefore, under the rule of law that is

applicable here, the automatic stay did not apply to a sale of the equipment notes. United is enti-

tled to void the sale of the notes only on the basis that the sale violated the remedy provisions of

the Intercreditor Agreement.

**B.      United's Purchase of the Class A Certificates**

28.    As an initial matter, the fact that the Trustee did not formally designate an account

for deposit of the purchase price by United is now irrelevant since, in the briefing, the Trustee

has indicated that the appropriate account is the one to which payments are being made under the

Adequate Protection Stipulation and Order.  United may employ this account for the payment

specified by Section 6.01(b) of the Pass Through Trust Agreement.

29.     Next, any failure of United to have tendered the appropriate amount for the pur-

chase of the Class A Certificates can be cured by United tendering that appropriate amount now.

The notice requirements of Section 6.01(b) have been met, even if they were applicable.  (The

purpose for the required ten-day notice was to allow other Class B Certificateholders to partici-

pate in a proposed purchase, and there are no Class B Certificateholders other than United.

There is nothing in the ten-day notice requirement that gives any rights to the Class A trust or the

Class A Trustee.)

30.     The only remaining question is the appropriate purchase price for the Class A

Certificates.[1]  If United pays the appropriate amount into the account that is being used for the

adequate protection stipulation payments, that will effectuate, as of that date, a change in the

ownership of the Certificates without the need for any delivery of the Certificates themselves.

31.     Section 6.01(b) of the Pass Through Trust Agreement provides:

> The purchase price with respect to the Certificates of any class shall be equal to
> the Pool Balance of the Certificates of such class, together with accrued and un-
> paid interest thereon to the date of such purchase, without Additional Payments,

---

[1] At the hearing on November 18, 2005, the court rejected arguments by the Trustee (1)
that United was required to make a demand on the trustee of the Class B trust before initiating a
suit to enforce its right to purchase the Class A certificates, and (2) that the purchase right re-
quired United to purchase the Class A certificates at the same time it purchased the Class B and
C certificates.  Additionally, the Trustee has argued that United could not simultaneously be a
debtor on the equipment notes and a holder of certificates in trusts whose res includes the notes.
That contention cannot be accepted in light of the fact that United was, from the beginning of the
financing, a holder of certificates in the Class D trust, whose res was the Class D equipment
notes.

but including any other amounts then due and payable to the Certificateholders of such class under this Agreement, the Intercreditor Agreement or any other Note Document or [sic] on or in respect of the Certificates of such class.

In turn, "Pool Balance" is defined in Section 1.01 as meaning "as of any date, (1) the original aggregate face amount of the Certificates of [a particular] class less (ii) the aggregate amount of all payments made in respect of such Certificates . . . other than payments made in respect of interest or Additional Payments thereon or reimbursement of any costs or expenses incurred in connection therewith." These definitions require that the price United must pay for the Class A Certificates is the principal amount of the Certificates (that is, their face reduced by whatever principal payments were made—since payments of interest, expense reimbursements, and "Additional Payments" do not reduce the face amount payable), together with any unpaid interest on this principal amount.[2]

32.    In calculating this amount, there are two basic points in dispute. The first deals with the interest rate required to be paid on the principal balance; the Trustee asserts that it is 9 percent, while United contends that it is LIBOR plus 22 basis points. The second is whether the Trustee is entitled to calculate the principal balance by deducting sums paid by United that the Trustee placed in a reserve and to add additional interest to account for delays in the payment of interest or principal due to the fact that United's payments were made pursuant to the Adequate Protection Stipulation and Order as opposed to the underlying equipment notes.

33.    *Interest rate.* There is nothing in the agreements themselves that would prevent the interest rate that is applicable pre-default from applying post-default. To the contrary, apart from its ineffective effort to sell the equipment notes, the remedy exercised by the Trustee was

---

[2] The parties agree that no "Additional Payments" are relevant to the calculation of the purchase price. See United Statement of Material Facts ¶19, admitted in the Trustee's Response.

14

that provided by Section 4.1(b) of the Intercreditor Agreement—to "maintain possession of the

equipment notes and continue to apply monies received in respect of such equipment notes," in

accordance with the generally applicable terms of the Intercreditor Agreement.

34.    New York cases hold that an interest-bearing instrument that has no contrary pro-

vision should bear interest after maturity as otherwise provided by law.

> It is the settled law in this State that, in the absence of other agreement by the par-
> ties, "where one contracts to pay a principal sum at a certain future time with in-
> terest, the interest prior to the maturity of the contract is payable by virtue of the
> contract, and thereafter as damages for the breach of the contract." (*O'Brien v.
> Young*, 95 N. Y. 428, 429.) After maturity, in the absence of other agreement, the
> interest is computed as damages according to the rate then prescribed by law,
> whether that is more or less than the contract rate. (*O'Brien v. Young, supra*, p.
> 430; *Ferris v. Hard*, 135 N. Y. 354; *Title Guarantee & Trust Co. v. 2846 Briggs
> Avenue, Inc.*, 283 N. Y. 512.)

*Metropolitan Sav. Bank v. Tuttle*, 49 N.E.2d 983, 984 (N.Y. 1943).[3] The Trustee con-

tends that a New York judgment rate of 9% is the applicable rate after maturity.

35.    However, the Class A Certificates (a copy of which is Exhibit E to United's

memorandum in support of its summary judgment motion) reflect no contract to pay a principal

sum at a certain future time. Although the Trustee has referred to a "maturity date" for the Cer-

tificates, the Certificates themselves provide for no fixed payment date. Rather, they provide (at

p. 1) only for a "Final Expected Distribution Date" of December 2, 2002, and specify a proce-

dure designed to produce a sale of the equipment notes held by the Class A trust, at par, as of that

date, so as to allow the final distribution when expected. The relevant provision of the Certifi-

cate (at p. 3) states:

---

[3] This conclusion corrects a misstatement made by the court during argument on Decem-
ber 16, 2005.

15

No later than 60 days prior to the Final Expected Distribution Date, the Company shall cause the Trustee to hire (and, if the Company does not so cause the Trustee, the Trustee shall no later than 30 days prior to the Final Expected Distribution Date, hire) an independent investment banker . . . to (i) determine the interest rate on each series of the Equipment Notes . . . that . . . shall enable each such series of Equipment Notes to be sold at 100% of the principal amount thereof on the Final Expected Distribution Date, and (ii) . . . use its best efforts to sell any such Equipment Notes with such new interest rates on the Final Expected Distribution Date or as promptly as practicable thereafter.

Thus, a sale of the notes was not required as of the expected date. Without such a sale—which, as indicated above, has not taken place—the Certificates remain outstanding, with principal and interest payable according to their terms, rather than pursuant to any statutory rate.

36.     The interest rate applicable to the Class A Certificates, as stated therein (at p. 2), is "a floating rate equal to Three-Month LIBOR [London Interbank Offered Rate] plus 0.22%."

37.     Following the Final Expected Distribution Date, the Trustee continued to make interest payments on the Class A Certificates at LIBOR plus 0.22%. (Affidavit of Michael Hoggan in Opposition to United's motion for summary judgment, at ¶ 16.) Although the relevant agreements are not ambiguous on the question of the applicable interest rate, the Trustee's conduct provides parol evidence consistent with conclusion that LIBOR plus 0.22% is the applicable rate. The statement that the Trustee continued to apply this rate "[f]or the sole purpose of convenience" (*id.*) has no apparent basis, since it would be no less convenient for the Class A Certificateholders to receive the higher rate of interest that the Trustee now contends was mandated.

38.     The Trustee has submitted documents and affidavits seeking to establish that United offered an interest rate higher than LIBOR plus 0.22% in settlement discussions. These materials are inadmissible under Rule 408 of the Federal Rules of Evidence.

16

39.    *Other adjustments.* United failed to make payments on the equipment notes following its bankruptcy filing, but thereafter entered into the Adequate Protection Stipulation and Order, pursuant to which it made payments on account of its use of the 14 aircraft securing the notes. Pursuant to ¶ 7 of the Adequate Protection Stipulation and Order, these payments were required to be "credited against United payment obligations under the Aircraft Agreements and . . . applied in accordance with the terms of the Aircraft Agreements." This provision required the Trustee to account for United's payments with respect to Class A Certificate Holders in the manner specified by the relevant agreements. There is nothing in the relevant agreements allowing the Trustee to withhold payments from United to establish a reserve fund or to delay transferring the payments to the Certificateholders. United prepared a calculation of the purchase price as of its notice to purchase in August, reflected in Exhibit I to the memorandum supporting its motion for summary judgment ('Exhibit I"), applying the appropriate methodology. However, after the preparation of Exhibit I, United made additional payments to the Trustee pursuant to the Adequate Protection Stipulation and Order, and accordingly, the exhibit does not reflect the current purchase price.

40.    United's motion for summary judgment is therefore granted to this extent: Upon United's payment of the amount set forth on Exhibit I, adjusted to reflect any changes caused by the events subsequent to the initial calculation, into the account that has been designated by the Trustee for receipt of adequate protection payments, United will be the owner of the Class A Certificates and the controlling party with respect to remedies under the Intercreditor Agreement.

Date:    December 27, 2005

_____
United States Bankruptcy Judge

17